## DETROIT EDISON CO. v. KNOWLES.
### No. 9998.

Circuit Court of Appeals, Sixth Circuit.

Dec. 13, 1945.

Richard Ford, of Detroit, Mich. (Harvey A. Fischer, Richard Ford, Hull, Brown & Fischer, Leon R. Jones, Norman R. Barnard, and Frederick C. Vieson, all of Detroit, Mich., on the brief), for appellant.

Hugh K. Davidson, of Detroit, Mich. (Hugh K. Davidson and Edgar A. Beauchamp, both of Detroit, Mich., and Roy A. McGinty, of Melvindale, Mich., on the brief), for appellee.

Before HICKS and MARTIN, Circuit Judges, and RAYMOND, District Judge.

RAYMOND, District Judge.

Plaintiff's husband, John Knowles, was electrocuted on June 6, 1943, in consequence of contact with a high tension transmission cable which dropped from a pole owned and maintained by defendant, upon an automobile driven by plaintiff.

Plaintiff alleges that as she was driving south on Telegraph Road near Detroit, she was forced to turn off the highway by what appeared to be a ball of fire descending onto the right hand side of the pavement, and that in so doing, she struck one of defendant's poles, and that the death of her husband occurred shortly thereafter. Plaintiff urges:

(1) "That the arcing of the defendant's wires, the plaintiff having shown causes for weakening of the wires, unexplained by the defendant by showing inspection, the wires being under the exclusive control of the defendant, was sufficient from which an inference of negligence could be drawn."

(2) "The defendant, having exclusive possession and right to control its electrical system, handling 24,000 volts of electricity, owed the duty of equipping the system with automatic fuses, circuit breakers, and other safety devices, which should have shut off the current the instant a broken wire of the system touched the ground, or touched another wire of the system, and that, since the current remained on the wires for more than two hours following the accident, it was indicated that no circuit breakers, fuses or other safety devices were installed, or if installed, that they failed to operate * *."

From the judgment of $10,000 entered upon a verdict for plaintiff, defendant appeals, contending that plaintiff failed to make out a prima facie case, that plaintiff failed to establish that defendant was guilty of any negligence that caused its electric transmission lines to break, that plaintiff and decedent were chargeable with contributory negligence as a matter of law, and that the trial court erred in instructing the jury in substance that plaintiff could recover on the principle of res ipsa loquitur.

Because there was reversible error in the charge of the court in its reference to the res ipsa loquitur rule, extended discussion of other alleged errors is unnecessary. Under the rule firmly established by Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, and in view of the numerous determinations by the Supreme Court of Michigan that the doc-

trine of res ipsa loquitur is repudiated in that state, no sufficient reason appears for presenting that doctrine and its limitations to the jury. The Michigan Supreme Court has consistently and emphatically denied the existence of the rule. It has stressed the rule that mere occurrence of an accident does not in any circumstances raise a presumption of negligence, and that proof of accident and ensuing injury does not cast the burden of proving freedom from negligence upon the defendant, or place upon defendant the burden of going forward with the evidence so that a directed verdict would ensue were not the presumption rebutted. See Mitchell v. Stroh Brewery Co., 309 Mich. 231, 15 N.W.2d 144; In re Estate of Miller, 300 Mich. 703, 2 N.W. 2d 888; Poundstone v. Niles Creamery, 293 Mich. 455, 292 N.W. 367; Ionia School District v. Dadd, 308 Mich. 220, 13 N.W.2d 268; Grand Trunk W. R. Co. v. Lovejoy, 304 Mich. 35, 7 N.W.2d 212; McLeod v. Savoy Hotel Co., 267 Mich. 352, 255 N.W. 308; Eaton v. Consumers Power Co., 256 Mich. 549, 240 N.W. 24; Laxton v. Hatzel & Buehler, 6 Cir., 142 F.2d 913; Kenower v. Hotels Statler Co., 6 Cir., 124 F.2d 658.

■ The fact that the Michigan Supreme Court has recognized that in many cases circumstantial evidence of the cause of an accident is sufficiently strong to warrant an inference or deduction of negligence, and that results are reached which are not different from those which would ensue in similar cases in jurisdictions which apply the doctrine of res ipsa loquitur, in no way weakens the repudiation of the doctrine itself. It is clear that the Michigan Supreme Court has not approved a rule which casts upon defendant the burden of proving freedom from negligence. Whatever may be our views with reference to the wisdom or logic forming the basis for the Michigan rule, the federal courts in Michigan are bound by it, and a defendant against whom negligence is alleged is entitled to a clear and unqualified statement in the charge to the jury that the plaintiff carries the burden of proving negligence throughout the case, and that at no time does the burden of proving freedom from negligence or the burden of going forward with the evidence, rest upon defendant.

We believe that the court was in error in stating to the jury that:

"It is unfortunate that we really do not know much about this case—why those wires broke, and what the ordinary customs of the business were as to inspection and care.

\* \* \* \* \* \*

"Whether or not the company followed the established usages and customs in the handling of the transmission of this element, we really do not know. There is no definitely established test of what those standards were, and the record is absolutely barren of whether or not, having known what those standards were, they were met or not by the defendant company.

"I am not blaming either party in the case, but it would have been easier for you and easier for me if we did know what those established customs and systems were, particularly as it is one of the contentions of the plaintiff that it was due to a breakdown in the system used, or the failure to act of the system used by the defendant. \* \* \*

"I said at the outset that this is a difficult case. It is a difficult case for the judge, because the law in Michigan is not clear. Now, I say that advisedly. There is a doctrine of law that in a Latin phrase we call res ipsa loquitur. Now, that means that if an accident happens and there is no other explanation but that an accident happened without any detail fixing the blame upon a person, that liability falls just because the accident happened.

"I told you at the outset that the Supreme Court—I didn't tell you that, but it is a fact that the Supreme Court of the State of Michigan has repeatedly said that that law is not Michigan law, and you and I are bound by Michigan law. While they say that in so many words, they almost nullify it, in effect, because if I understand the law in Michigan now as to that doctrine, it is this: that while it is true that the fact of the happening of the accident itself does not bear with it a responsibility, a liability, yet there need not be absolutely direct testimony fixing the liability upon the defendant, or absolute and direct testimony establishing that the defendant was guilty of negligence directly, but that may be done by inference.

"Now that means this, that while all the law says we may not speculate, our judgments in courts must be founded upon substantial evidence, we may not guess, yet while there is no direct testimony as to what caused the breaking of these wires, if there is evidence from the surrounding tes-

424

timony upon which a person might reasonably infer that the defendant was guilty of negligence, then that inference has worth and validity, and upon it may be based a judgment of liability.

"And in this case that means this. We have no direct explanation of the cause of this accident, but if there be any substantial evidence of any of the surrounding occurrences, happenings, or conditions, from which you can with common sense say, 'Well, if that thing happened, then the company must have failed to do this or to do that,' and that act was the proximate cause of the happening of the accident—I don't know whether I make myself any clearer than the Supreme Court has. It is a difficult point in law to understand, because, as our Supreme Court 'says almost at the beginning of every case that involves this doctrine, 'It doesn't exist,' and yet goes on to show how it really does exist, in fact.

\* \* \* \* \* \*

"There is no direct testimony, but if there be any testimony of a substantial nature from which you can infer that they were not working properly and that lack of the proper working of these devices was the proximate cause of the happening of the accident, you may so conclude, if you do that under the testimony in the case."

■ These statements, while containing language which recognizes the substance of the Michigan rule, are so qualified and conflicting as to be confusing to the average juryman. The final impression left thereby is that the Supreme Court of Michigan has nullified its repudiation of the doctrine of res ipsa loquitur and that the doctrine of res ipsa loquitur does, in fact, prevail.

In referring to the evil of contradictory instructions, in the case of Standard Life & Accident Insurance Co. v. Sale, 6 Cir., 121 F. 664, 669, Judge Severens said:

"These instructions stated the law correctly. But the mere giving them without recalling or explaining the instructions given on the court's own motion would not be likely to remove the impression already made. In order to render an error harmless, it must be made to appear clearly that the party complaining of it was not prejudiced.

"The difficulty created by inconsistent or contradictory instructions on a material point is, first, that it is impossible for the jury to know which is to be their guide; and, secondly, it is impossible after verdict to ascertain which instruction the jury followed."

See also, 53 Am.Jur., Trial, Secs. 545, 548; 3 Am.Jur., Appeal and Error, Sec. 1108.

Careful consideration of the Michigan authorities and of the interpretation thereof by this court does not support the positive statement of the trial court that the doctrine of res ipsa loquitur does, in fact, exist in Michigan.

Plaintiff's attorney, in his argument to the jury, urged a verdict because of the failure of defendant to offer evidence on controlling issues. He said:

"They would have put their experts on the stand, but their experts would not have done them any good. I take the position that if the Edison Company were right on this, if they had dared to tell us the story, what the log, the record of the current would show, what the automatic breakers would show, what the size of the wire would show, if they weren't afraid of it, they would have done so.

\* \* \* \* \* \*

"He asked Mr. Lemon on the witness stand if lighting (sic) would pock the wires and make them weak, and we claim that the wires having broken, as Mrs. Knowles came along, the Edison Company not having taken any measures in this case to show you how long the wires had been put up didn't dare do it—all that sort of information" (R. 71).

The portions of the charge quoted permitted the jury to find negligence by inferences from the mere breaking of the wire or the non-action of the circuit breakers. In this, the court was in error for essentially the same reason as stated by the Supreme Court of Michigan in the case of Weissert v. City of Escanaba, 298 Mich. 443, 451, 299 N.W. 139, 142, where it was said:

"To approve of the charge of the court on the question of defendant's liability would practically be an adoption of the rule of res ipsa loquitur, which is not in vogue in this State. In effect this charge permitted the jury to say that because there had been an accident by reason of a power line being down, and some one was injured, that the owner of the agency responsible for the accident must respond in damages unless such owner made such inspection, and used such care as the jury thought should be made and used in handling electric current. In

other words, it left the question of defendant's negligence too much in the realm of speculation and conjecture by the jury without admonishing them as to the applicable rules of law which were to govern them in their deliberations."

In the instant case, the charge permitted the jury to find for plaintiff unless defendant produced some explanation of the accident not involving negligence. In fact, the jury was led to believe that it might base a verdict for plaintiff on the doctrine of res ipsa loquitur.

For the errors in the charge of the court herein noted, the judgment must be reversed and the case remanded for a new trial.